**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MARC BENSIMON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CASCADIAN THERAPEUTICS, INC., CHRISTOPHER S. HENNEY, ROBERT W. AZELBY, GWEN A. FYFE, STEVEN P. JAMES, TED W. LOVE, SCOTT D. MYERS, DANIEL K. SPIEGELMAN, SEATTLE GENETICS, INC., and VALLEY ACQUISITION SUB, INC.<br><br>Defendants. | NO. 2:18-cv-00248<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(e) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Marc Bensimon ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Cascadian Therapeutics, Inc. ("Cascadian" or the "Company"), against Cascadian, and the Company's Board of Directors (the "Board" or the "Individual Defendants")(collectively with the Company, the "Defendants"), for violations of Sections 14(d),

CLASS ACTION COMPLAINT - 1

14(e) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Seattle Genetics, Inc. ("Parent") and Valley Acquisition Sub, Inc. (the "Merger Sub" and collectively with Parent, "Seattle Genetics") as a result of an unfair process for an unfair price, and to enjoin a tender offer in which Seattle Genetics will acquire each outstanding share of Cascadian common stock for $10.00 per share in cash, with a total valuation of approximately $614 million (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 31, 2018, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3.      Thereafter, on February 8, 2018, Cascadian filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.  Pursuant to the terms of the Merger Agreement, Merger Sub commenced a Tender Offer, presently scheduled to expire on March 9, 2018 (one minute after 11:59pm).

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the 14D-9 describes an insufficient sales process in which the Board only paid lip service to its fiduciary duties by creating a special committee of the Board to serve as a "Transaction Committee" as a workaround to the admittedly conflicted nature of the Board at large.  However, the Transaction Committee members were themselves conflicted due to the large cash payouts they received for their work in securing the Proposed Transaction.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits while the Company's stockholders are cashed out at an unfair price.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange large, illiquid blocks of Company stock for massive payouts, in addition to receiving cash in exchange

CLASS ACTION COMPLAINT - 2

1  for all outstanding and unvested options and/or other types of restricted stock units.  Moreover,

2  certain Directors and other insiders will also be the recipients of lucrative change-in-control

3  agreements, triggered upon the termination of their employment as a consequence of the

4  consummation of the Proposed Transaction.

5       6.  Of significant note, Defendant Scott D. Myers will receive more approximately

6  **$15 million** in cash pursuant to the terms of the Proposed Transaction.  Additionally, other

7  Company Directors, officers, and insiders will receive pay days ranging in the millions of dollars

8  each.  Such a large payday has clearly tainted the motivations of the Board in approving the

9  Proposed Transaction.

10       7.  Defendants breached their fiduciary duties to the Company's stockholders by

11  agreeing to the Proposed Transaction which undervalues Cascadian and is the result of a flawed

12  sales process.  Post-closure, Cascadian stockholders will be frozen out of seeing the return on

13  their investment of any and all future profitability of Cascadian.

14       8.  Significantly, in violation of sections 14(d), 14(e) and 20(a) of the Securities and

15  Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties,

16  Defendants caused to be filed the materially deficient 14D-9 on February 8, 2018 with the United

17  States Securities and Exchange Commission ("SEC") in an effort to solicit stockholders to tender

18  their Cascadian shares in favor of the Proposed Transaction.  The 14D-9 is materially deficient

19  and deprives Cascadian stockholders of the information they need to make an intelligent,

20  informed and rational decision of whether to tender their shares in favor of the Proposed

21  Transaction.  As detailed below, the 14D-9 omits and/or misrepresents material information

22  concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b)

23  Company's financial projections; and (c) the data and inputs underlying the financial valuation

24  analyses that purport to support the fairness opinions provided by the Company's financial

25  advisor, Perella Weinberg Partners, L.P. ("Perella Weinberg").

26       9.  Absent judicial intervention, the Proposed Transaction will be consummated,

27  resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed

28  CLASS ACTION COMPLAINT - 3

1   Transaction or, in the event the Proposed Transaction is consummated, to recover damages

2   resulting from violation of the federal securities laws by Defendants.

3                                           **PARTIES**

4          10.     Plaintiff is a citizen of the State of Maryland and, at all times relevant hereto, has

5   been a Cascadian stockholder.

6          11.     Defendant Cascadian is a clinical-stage biopharmaceutical company, that

7   researches, develops, and sells therapeutic products for the treatment of cancer.  Cascadian is a

8   Delaware corporation with its principal executive offices located at 3101 Western Ave., Suite

9   600, Seattle, WA 98121.  Shares of Cascadian common stock are traded on the NasdaqGS under

10  the symbol "CASC."

11         12.     Defendant Christopher S. Henney ("Henney") has been a Director of the

12  Company at all relevant times.  In addition, Henney serves as the Chairman of the Board, and on

13  the Board's Compensation and Corporate Governance and Nominating Committees.

14         13.     Defendant Robert W. Azelby ("Azelby") has been a director of the Company at

15  all relevant times.   In addition, Azelby serves on the Board's Corporate Governance and

16  Nominating Committee.

17         14.     Defendant Gwen A. Fyfe ("Fyfe") has been a director of the Company at all

18  relevant times.

19         15.     Defendant Steven P. James ("James") has been a director of the Company at

20  all relevant times.   In addition, James serves on the Board's Audit and Compensation

21  Committees.

22         16.     Defendant Ted W. Love ("Love") has been a director of the Company at all

23  relevant times.  In addition, Love serves on the Board's Audit and Compensation Committees.

24         17.     Defendant Scott D. Myers ("Myers") has been a director of the Company at all

25  relevant times.   In addition, Myers is the Company's President and Chief Executive Officer

26  ("CEO").

27

28  CLASS ACTION COMPLAINT - 4

18.     Defendant Daniel K. Spiegelman ("Spiegelman") has been a director of the Company at all relevant times.   In addition, Spiegelman serves on the Board's Audit and Corporate Governance and Nominating Committees.

19.     Defendants Henney, Azelby, Fyfe, James, Love, Myers, and Spiegelman identified in ¶¶ 12 - 18 are collectively referred to as the "Individual Defendants."

20.     Parent is a biotechnology company focused on developing and commercializing innovative, empowered monoclonal antibody-based therapies for the treatment of cancer.  Parent is a Delaware corporation with its principal executive offices located at 21823 30th Drive, SE Suite, Bothell, WA 98021.  Parent common stock is traded on the NasdaqGS under the ticker symbol "SGEN."

21.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent, and can be served care of its agent for service of process, The Corporation Service Company, at 251 Little Falls Drive, Wilmington, DE 19808.

### JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Cascadian has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

CLASS ACTION COMPLAINT - 5

**CLASS ACTION ALLEGATIONS**

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Cascadian common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action because:

a.  The Class is so numerous that joinder of all members is impracticable.  As of November 8, 2017, there were more than 50 million common shares of Cascadian stock outstanding.  The actual number of public stockholders of Cascadian will be ascertained through discovery;

b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.  Whether Defendants have violated the federal securities laws;

ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the 14D-9; and

iii.  Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

CLASS ACTION COMPLAINT - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  members of the Class which would establish incompatible standards of

2  conduct for the party opposing the Class;

3       f.  Plaintiff anticipates that there will be no difficulty in the management of this

4  litigation and, thus, a class action is superior to other available methods for the

5  fair and efficient adjudication of this controversy; and

6       g.  Defendants have acted on grounds generally applicable to the Class with

7  respect to the matters complained of herein, thereby making appropriate the

8  relief sought herein with respect to the Class as a whole.

9  **THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

10  27.  By reason of the Individual Defendants' positions with the Company as officers

11  and/or directors, said individuals are in a fiduciary relationship with Cascadian and owe the

12  Company the duties of due care, loyalty, and good faith.

13  28.  By virtue of their positions as directors and/or officers of Cascadian, the

14  Individual Defendants, at all relevant times, had the power to control and influence, and did

15  control and influence and cause Cascadian to engage in the practices complained of herein.

16  29.  Each of the Individual Defendants are required to act with due care, loyalty, good

17  faith and in the best interests of the Company.  To diligently comply with these duties, directors

18  of a corporation must:

19       a.  act with the requisite diligence and due care that is reasonable under

20  the circumstances;

21       b.  act in the best interest of the company;

22       c.  use reasonable means to obtain material information relating to a given

23  action or decision;

24       d.  refrain from acts involving conflicts of interest between the fulfillment

25  of their roles in the company and the fulfillment of any other roles or

26  their personal affairs;

27

28  CLASS ACTION COMPLAINT - 7

e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Cascadian, are obligated to refrain from:

a.   participating in any transaction where the directors' or officers' loyalties are divided;

b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

31.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Cascadian, Plaintiff and the other public stockholders of Cascadian, including their duties of loyalty, good faith, and due care.

32.   As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Cascadian common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

33.   Cascadian is a clinical-stage biopharmaceutical company, that researches, develops, and sells therapeutic products for the treatment of cancer in the United States.

CLASS ACTION COMPLAINT - 8

34.     The Company lead clinical-stage product candidate is tucatinib, an orally active and HER2-selective small molecule tyrosine kinase inhibitor, which is in two Phase Ib trials, one in combination with Kadcyla and another in combination with Xeloda and/or Herceptin.   The Company is also developing Checkpoint kinase 1, a protein kinase that is in pre-clinical studies to regulate the cell division cycle, as well as to DNA damage and replication stress.

35.     In addition, Cascadian focuses on the development of novel antibodies and T-cell immunoreceptor with Ig and ITM domains, an inhibitory receptor expressed on T-cells and NK cells that negatively regulate immune response to cancers.

36.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a November 8, 2017 press release announcing its 2017 Q3 financial results, the Company noted such financial highlights as an increase in the Company's cash, cash equivalents, and marketable securities of approximately $50 million dollars year-on-year.

37.     In addition to these positive financial results, the Company also experienced positive and meaningful progress in clinical developments of its products.   For example, Tucatinib was granted orphan drug designation by the U.S. Food and Drug Administration (FDA) for the treatment of HER2+ colorectal cancer - the second orphan designation for tucatinib, which also has orphan designation in breast cancer with brain metastases. Additionally, the Company noted that it continued enrollment of HER2CLIMB pivotal trial, keeping enrollment on track in North America, Western Europe and Australia.

38.     Speaking on these positive results, Defendant President and CEO Myers stated "We had a productive third quarter. Tucatinib was granted orphan drug designation for a second indication, HER2+ colorectal cancer and enrollment began for an investigator-sponsored study of tucatinib in combination with trastuzumab in HER2 amplified metastatic colorectal cancer. Results from a pooled analysis of tucatinib combination studies were presented at ESMO that provide further support for the development of tucatinib in HER2+ metastatic breast cancer with brain metastases."

CLASS ACTION COMPLAINT - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

39.     Myers continued, noting that he expects future success from Cascadian, by stating, "….enrollment of the HER2CLIMB pivotal trial continues to be robust, and we expect to end the year within our cash guidance."

40.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Cascadian.  For example, in an August 8, 2017 press release announcing the Company's 2017 Q2 financial results, Cascadian reported a strong cash position of $125.4 million.

41.     In addition, these results also reported very positive clinical trial results, including a July 2017 announcement that the Company had received confirmation from the EMA that positive results from its ongoing pivotal trial of tucatinib, known as HER2CLIMB, could serve as a single registrational trial for submission of a Marketing Authorization Application to the EMA and potential marketing approval.

42.     Speaking on these results, Defendant Myers stated, "During the second quarter, we were pleased to receive confirmation from the European Medicines Agency (EMA) that HER2CLIMB, if positive, could serve as a single registrational trial for submission to the European regulators for potential marketing approval, and that tucatinib was granted orphan drug designation by the U.S. Food and Drug Administration (FDA) for the treatment of breast cancer patients with brain metastases."

43.     Myers continued, noting the Company's global reach, stating "We are now enrolling patients in HER2CLIMB on three continents.  We are pleased with site activations and patient enrollment, which are currently ahead of our projections in North America."

44.     Clearly, based upon these positive test results for tucatinib and other products in the Company's research and development pipeline, the Company is likely to have tremendous future success with products currently under research and development.  While this will likely result in large returns on investment for Seattle Genetics, the freezing out of Plaintiff and other public Cascadian stockholders by the consummation of the Proposed Transaction will lead to them not being able to share in the profits of their sound investment.

CLASS ACTION COMPLAINT - 10

45. Moreover, those in the financial media have taken note of the Company's rise, with analysts at *Seeking Alpha*, predicting in a January 30, 2018 article that shares of the Company will "continue to rise."

46. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Cascadian to enter into the Proposed Transaction, thereby depriving Plaintiff and other public stockholders of the Company the opportunity to reap the benefits of Cascadian's present and future success.

***The Flawed Sales Process***

47. The process deployed by the Individual Defendants was flawed and inadequate, and conducted out of the self-interest of the Individual Defendant. Most significantly, the 14D-9 goes claims that a committee of disinterested directors was formed to alleviate any concerns of influence there might be due to a "relationship involving one of Cascadian's strategic partners and one of the Board members;" however, at no point does the 14D-9 give any pertinent information about this relationship or the persons or entities involved. Such information is vital to public stockholders determining whether to tender their shares in support of the Proposed Transaction, especially if the "strategic partner" involved is Seattle Genetics.

48. For example, the 14D-9 is silent as to the specific reasoning for Party A's withdrawal from the sales process. This withdrawal is of significant note as Party A had been the front-runner in the sales process since November 2017, submitting a bid of the same value offered by Seattle Genetics in the Proposed Transaction.

49. Additionally, the 14D-9 is unclear as to the powers of the committee of independent directors formed on September 22, 2016 relative to a strategic alternatives review. The 14D-9 is also unclear if the September 2016 committee is the same committee that was discussed by the 14D-9 as being created on September 26, 2017 and described as being the controlling "Transaction Committee" for the process. If the committees were separate, the 14D-9 is unclear and fails to describe adequately what the differences between them were, including the powers they possessed and the mandates that they were given.

CLASS ACTION COMPLAINT - 11

50.     The 14D-9 is silent as to the nature of the "relationship involving one of Cascadian's strategic partners and one of the Board members" discussed during the September 22, 2016 and September 26, 2017 Board meetings, including, but not limited to, the identity of the strategic partner, the identity of the affected Board member of Cascadian, and the nature of the relationship necessitating such discussions.

51.     The 14D-9 is unclear as to the number of potentially interested third parties contacted in June 2016 or their nature as strategic partners or financial partners.

52.     Moreover, the 14D-9 is unclear as to exactly how many of the June 2016 contacted interested third parties entered into confidentiality agreements, if any such agreements were different from one another, and if any such agreements contained "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

53.     The 14D-9 is unclear if the confidentiality agreement entered into between Cascadian and Party A differed from any other confidentiality agreements entered into during the sales process by Cascadian, and if it contained a "don't-ask, don't-waive" or standstill provision, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

***The Proposed Transaction***

54.     On January 31, 2018, Cascadian and Seattle Genetics issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **BOTHELL and SEATTLE, WA** – January 31, 2018 – Seattle Genetics, Inc. (Nasdaq:SGEN) and Cascadian Therapeutics, Inc. (Nasdaq:CASC) today announced the signing of a definitive merger agreement under which Seattle Genetics has agreed to acquire Cascadian Therapeutics.  Under the terms of the agreement, Seattle Genetics will pay $10.00 per share in cash, or approximately $614 million. The transaction was unanimously approved by the Boards of Directors of both companies.
>
> Cascadian Therapeutics' most advanced program is tucatinib, an investigational oral, small molecule tyrosine kinase inhibitor (TKI) that is highly selective for HER2, a growth factor receptor that is overexpressed in multiple cancers, including breast, colorectal, ovarian and gastric. Tucatinib is currently being

CLASS ACTION COMPLAINT - 12

evaluated in a randomized global pivotal trial called HER2CLIMB for patients with HER2-positive (HER2+) metastatic breast cancer, including patients with or without brain metastases. Tucatinib has been evaluated as a single agent and in combination with both chemotherapy and other HER2-directed agents including Herceptin® (trastuzumab) and Kadcyla® (trastuzumab emtansine). Results from phase 1b trials showed that the combination of tucatinib, capecitabine and trastuzumab was generally well-tolerated and demonstrated clinical activity in patients with and without brain metastases. The data support the ongoing pivotal trial and the potential role of tucatinib in earlier lines of metastatic breast cancer.

"This acquisition would enhance our late-stage clinical pipeline with a potentially best-in-class, orally available and highly selective TKI for patients with HER2-positive metastatic breast cancer," said Clay Siegall, Ph.D., President and Chief Executive Officer of Seattle Genetics. "Tucatinib would complement our existing pipeline of targeted cancer therapies, provide a third late-stage opportunity for a commercial product in solid tumors and expand our global efforts in breast cancer. It also leverages our broad expertise and resources to advance and expand the tucatinib program for patients. Beyond breast cancer, we believe there may be opportunities for tucatinib in other tumor types, such as HER2-positive metastatic colorectal cancer. Cascadian's pipeline also includes a preclinical immuno-oncology agent. We look forward to welcoming the team at Cascadian Therapeutics and continuing the momentum of the tucatinib development program."

"This agreement represents a very positive outcome for patients with HER2-expressing cancers, our employees and for our stockholders," said Scott D. Myers, President and Chief Executive Officer of Cascadian Therapeutics. "Seattle Genetics has the development and commercial capabilities and the resources needed to more fully realize the potential of tucatinib as a new best-in-class treatment option for metastatic breast cancer, colorectal cancer and potentially for other indications."

**Terms of the Transaction**

Under the terms of the definitive merger agreement, Seattle Genetics will commence a tender offer on or about February 8, 2018 to acquire all of the outstanding shares of common stock of Cascadian Therapeutics for $10 per share in cash. This represents a 69 percent premium to the closing price of Cascadian Therapeutics' common stock on Tuesday, January 30, 2018, and a 139 percent premium to its 30-day volume weighted average stock price. The tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Cascadian Therapeutics common stock (on a fully diluted basis) and the expiration or early termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the closing of the tender offer, a wholly-owned subsidiary of Seattle Genetics will merge with and into Cascadian Therapeutics,

CLASS ACTION COMPLAINT - 13

with each share of Cascadian Therapeutics common stock that has not been tendered being converted into the right to receive the same $10 per share in cash offered in the tender offer. The transaction is anticipated to close in the first quarter of 2018.

In connection with the transaction, Seattle Genetics has secured a financing commitment in the amount of $400 million from Barclays and JPMorgan-Chase Bank. The balance of the consideration will be provided from cash on hand.

Leerink Partners LLC is acting as lead financial advisor to Seattle Genetics. Barclays and J.P. Morgan Securities LLC are also acting as financial advisors on the transaction. Perella Weinberg Partners LP is acting as financial advisor to Cascadian Therapeutics. Legal counsel for Seattle Genetics is Sullivan & Cromwell LLP and legal counsel for Cascadian Therapeutics is Reed Smith LLP. Goodwin Procter LLP acted as special counsel for the Cascadian Therapeutics Board of Directors and Board transaction committee

### *The Inadequate Merger Consideration*

55.  Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Seattle Genetics establish the inadequacy of the merger consideration.

56.  First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key drug trial advances and increases in the cash position of the Company in recent quarters.

57.  For example, financial analysts at Jefferies Group have valued the Company as high as $15.00 per share within the past year, *a value more than 50% greater than that contained in the Proposed Transaction*.

58.  Moreover, Company stocks have traded at a 52-week high of $10.21 per share, or a value more than 2.1% greater than that contained in the Proposed Transaction.

59.  Additionally, Cascadian's future success is extremely likely, given the consistent increases in its cash on hand, and its steady achievement of regulatory and research goals associated with its products in development.

CLASS ACTION COMPLAINT - 14

60.     As stated previously, the recent positive test results for drug trials relating to the Company's tucatinib product indicate a highly promising and profitable future for Cascadian in the short term future.  The Company is likely to have tremendous future success with products currently under research and development, including tucatinib.  While this will likely result in large returns on investment for Seattle Genetics, the freezing out of Plaintiff and other public Cascadian stockholders by the consummation of the Proposed Transaction will lead to them not being able to share in the profits of their sound investment.

61.     Obviously, the opportunity to invest in such a company on the rise is a great coup for Seattle Genetics, however it undercuts the investment of Plaintiff and all other public stockholders.

62.     Finally, the Proposed Transaction represents a significant synergistic benefit to Seattle Genetics, which operates in the same industry as Cascadian, and will use the new assets and brand capital to bolster its own position in the market.  Specifically, Clay Siegall, CEO of Seattle Genetics noted in the press release announcing the Proposed Transaction that, "This acquisition would enhance our late-stage clinical pipeline with a potentially best-in-class, orally available and highly selective TKI for patients with HER2-positive metastatic breast cancer [...] Tucatinib would complement our existing pipeline of targeted cancer therapies, provide a third late-stage opportunity for a commercial product in solid tumors and expand our global efforts in breast cancer. It also leverages our broad expertise and resources to advance and expand the tucatinib program for patients.  Beyond breast cancer, we believe there may be opportunities for tucatinib in other tumor types, such as HER2-positive metastatic colorectal cancer.  Cascadian's pipeline also includes a preclinical immuno-oncology agent."

63.     Clearly, while the deal will be beneficial to Seattle Genetics it comes at great expense to Plaintiff and other public stockholders of the Company.

64.     Moreover, post-closure, Cascadian stockholders will be completely cashed out from any and all ownership interest in the Company, forever foreclosing them from receiving any future benefit in their investment as Cascadian continues on its upward financial trajectory.

CLASS ACTION COMPLAINT - 15

65.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Seattle Genetics at the expense of Cascadian stockholders, which clearly indicates that Cascadian stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

66.     The Merger Agreement contains certain provisions that unduly benefit Seattle Genetics by making an alternative transaction either prohibitively expensive or otherwise impossible.  Significantly, the Merger Agreement contains a termination fee provision that requires Cascadian to pay up to $17 million to Seattle Genetics if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Cascadian must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement. The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

67.     The Merger Agreement also contains a "No Solicitation" provision that restricts Cascadian from considering alternative acquisition proposals by, *inter alia*, constraining Cascadian's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Takeover Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

68.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Seattle Genetics information in order to match any other offer, thus providing Seattle Genetics' access to the unsolicited bidder's financial information and giving Seattle Genetics the ability to top the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in

2    favor of Seattle Genetics.

3         69.    These provisions, individually and collectively, materially and improperly impede

4    the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

5    pursuing other reasonable and more valuable proposals and alternatives in the best interests of

6    the Company and its public stockholders.

7         70.    Accordingly, the Company's true value is compromised by the consideration

8    offered in the Proposed Transaction.

9    ***Potential Conflicts of Interest***

10        71.    Cascadian insiders are the primary beneficiaries of the Proposed Transaction, not

11   the Company's public stockholders.   The Board and the Company's executive officers are

12   conflicted because they will have secured unique benefits for themselves from the Proposed

13   Transaction not available to Plaintiff and the public stockholders of Cascadian.

14        72.    Certain insiders stand to receive massive financial benefits as a result of the

15   Proposed Transaction.   Notably, Company insiders, including the Individual Defendants,

16   currently own large, illiquid portions of Company stock that will be exchanged for ***over 2.2***

17   ***million dollars*** in cash upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares (excluding awards under the Equity Plans) | Transaction Consideration for Shares |
|---|---|---|
| **Executive Officers and Directors** | | |
| Scott D. Myers, President, Chief Executive Officer and Director | 56,787 | $    567,870 |
| Gary W. Christianson, Chief Operating Officer | 6,515 | $    65,150 |
| Julie M. Eastland, Chief Financial Officer, Chief Business Officer and Secretary | 5,237 | $    52,370 |
| Scott R. Peterson, Chief Scientific Officer | 3,639 | $    36,390 |
| Luke N. Walker, Senior Vice President, Clinical Development | 10,315 | $    103,150 |
| Christopher S. Henney, Director | 60,185 | $    601,850 |
| Robert W. Azelby, Director | — | $    — |
| Gwen A. Fyfe, Director | 10,125 | $    101,250 |
| Steven P. James, Director | 13,677 | $    136,770 |
| Ted W. Love, Director | 37,394 | $    373,940 |
| Daniel K. Spiegelman, Director | 21,006 | $    210,060 |

CLASS ACTION COMPLAINT - 17

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

| | | |
|---|---|---|
| **All of our current directors and executive officers as a group (11 persons)** | 224,880 | $                2,248,800 |

73.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, will be canceled and converted into the right to receive from the surviving corporation cash in certain amounts.  Notably, Company insiders, including certain Individual Defendants, will receive huge payouts in cash upon the consummation of the Proposed Transaction due to the cashing out of their options.  Specifically, Defendant Bishop will receive ***nearly six million dollars*** for his stock options in Cascadian.  Total amounts of cash considerations for Company options is as follows:

| Name | Number of Options | Value of Options |
|---|---|---|
| **Executive Officers and Directors** | | |
| Scott D. Myers, President, Chief Executive Officer and Director | 724,810 | $2,765,445 |
| Gary W. Christianson, Chief Operating Officer | 269,203 | $   812,280 |
| Julie M. Eastland, Chief Financial Officer, Chief Business Officer and Secretary | 291,203 | $   880,182 |
| Scott R. Peterson, Chief Scientific Officer | 287,036 | $   833,000 |
| Luke N. Walker, Senior Vice President, Clinical Development | 127,936 | $   579,057 |
| Christopher S. Henney, Chairman of the Board and Director | 25,000 | $     91,000 |
| Robert W. Azelby, Director | 0 | $           0 |
| Gwen A. Fyfe, Director | 0 | $           0 |
| Steven P. James, Director | 0 | $           0 |
| Ted W. Love, Director | 0 | $           0 |
| Daniel K. Spiegelman, Director | 0 | $           0 |
| **All of our current directors and executive officers as a group (11 persons)** | 1,725,188 | $5,960,964 |

74.     Additionally, upon the consummation of the Proposed Transaction, each outstanding Company restricted stock unit ("RSU"), will be canceled and converted into the right to receive from the surviving corporation cash in certain amounts.  Notably, Company insiders, including certain Individual Defendants, will receive huge payouts in cash upon the consummation of the Proposed Transaction due to the cashing out of their RSUs, as follows:

| Name | Number of RSUs Held | Value of RSUs |
|---|---|---|
| **Executive Officers and Directors** | | |
| Scott D. Myers, President, Chief Executive Officer and Director | 303,300 | $ 3,033,000 |
| Gary W. Christianson, Chief Operating Officer | 187,975 | $ 1,879,750 |
| Julie M. Eastland, Chief Financial Officer, Chief Business Officer and Secretary | 223,975 | $ 2,239,750 |
| Scott R. Peterson, Chief Scientific Officer | 177,975 | $ 1,779,750 |
| Luke N. Walker, Senior Vice President, Clinical Development | 147,850 | $ 1,478,500 |

CLASS ACTION COMPLAINT - 18

| | | |
|---|---|---|
| Christopher S. Henney, Director | 13,927 | $ 139,270 |
| Robert W. Azelby, Director | 26,364 | $ 263,640 |
| Gwen A. Fyfe, Director | 13,927 | $ 139,270 |
| Steven P. James, Director | 13,927 | $ 139,270 |
| Ted W. Love, Director | 13,927 | $ 139,270 |
| Daniel K. Spiegelman, Director | 13,927 | $ 139,270 |
| **All of our current directors and executive officers as a group (11 persons)** | 1,137,074 | $11,370,740 |

75.     Moreover, certain employment agreements with all Cascadian executives, including certain directors, are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Cascadian's common stockholders.

76.     Of particular note, Defendant Myers stands to receive **_over ten million dollars_** in golden parachute compensation alone.

77.     The following table sets forth the Golden Parachute compensation for certain Cascadian directors and officers, as well as their estimated value payable:

| Name | Cash(2) | Equity(3) | Benefits(4) | Total |
|---|---|---|---|---|
| Scott D. Myers | $5,120,000 | $4,937,271 | $108,684 | $10,165,955 |
| Julia M. Eastland | $1,512,000 | $2,986,732 | $108,684 | $ 4,607,416 |
| Scott R. Peterson, Ph.D. | $ 686,350 | $2,474,162 | $108,684 | $ 3,269,196 |
| Gary W. Christianson | $ 629,000 | $2,569,593 | $108,684 | $ 3,307,277 |

78.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

79.     Finally, the 14D-9 indicates that the supposed "independent" Directors who made up the Transaction Committee will be paid hundreds of thousands of dollars.  The 14D-9 does not indicate whether this payment would have been made had the Company chosen to continue as a standalone entity, and therefore may belie a conflicting interest the members of the Transaction Committee may have held to push through the Proposed Transaction.

80.     Thus, while the Proposed Transaction is not in the best interests of Cascadian stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete 14D-9***

CLASS ACTION COMPLAINT - 19

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

81.     On February 8, 2018, Cascadian filed with the SEC a materially misleading and incomplete 14D-9 that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

82.     Specifically, the 14D-9 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

    a.   The 14D-9 fails to disclose sufficient information regarding the number and nature of all confidentiality agreements entered into between Cascadian and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

    b.   The 14D-9 fails to disclose sufficient information regarding the "relationship involving one of Cascadian's strategic partners and one of the Board members," discussed by the Board during meetings in September 2016 and September 2017.  Such information should include, but not be limited to, the identity of the strategic partner, the identity of the affected Board member of Cascadian, and the nature of the relationship necessitating such discussions;

    c.   The 14D-9 fails to disclose the communications regarding future employment or director positions for Company management and the Board;

    d.   The 14D-9 fails to disclose the reason for Party A's withdrawal from the sales process;

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

e.  The 14D-9 fails to disclose sufficient information regarding what powers the committee of independent directors formed on September 22, 2016 had in relation to a strategic alternatives review;

f.  The 14D-9 fails to disclose the difference, if any, between the September 2016 Committee and the Transaction Committee, including the powers they possessed or the mandate that they were given;

g.  The 14D-9 fails to disclose the powers and mandate of the September 2016 Committee;

h.  The 14D-9 fails to disclose the powers and mandate of the Transaction Committee;

i.  The 14D-9 fails to disclose provide sufficient information regarding the nature of the payments made to the members of the Transaction Committee, and if such payments would have been made had no merger agreement been entered into by the Company;

j.  The 14D-9 fails to disclose sufficient information regarding the number of potentially interested third parties contacted in June 2016 or their nature as strategic partners or financial partners;

k.  The 14D-9 fails to disclose sufficient information regarding how many of the June 2016 contacted interested third parties entered into confidentiality agreements;

l.  The 14D-9 fails to disclose how many of the November 2016 contacted interested third parties entered into confidentiality agreements; and

*Omissions and/or Material Misrepresentations Concerning Cascadian's Financial Projections*

83.  The 14D-9 fails to provide material information concerning financial projections provided by Cascadian's management and relied upon by Perella Weinberg in its analyses.  The 14D-9 discloses management-prepared financial projections for the Company which are

CLASS ACTION COMPLAINT - 21

materially misleading.  The 14D-9 indicates that in connection with the rendering of Perella Weinberg's fairness opinion, Perella Weinberg reviewed "reviewed the Cascadian Projections (as defined below) and other financial and operating data relating to the business of Cascadian, in each case, prepared by management of Cascadian for Perella Weinberg's use in connection with rendering its opinion, including the Cascadian Projections, at the direction of management of Cascadia."  Accordingly, the 14D-9 should have, but fails to provide, certain information in the projections that Cascadian's management provided to the Board and Perella Weinberg.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

84.    Notably, the 14D-9 provides several non-GAAP financial metrics, including EBITDA-CapEx and Unlevered Free Cash Flows, but fails disclose a reconciliation of all non-GAAP to GAAP metrics.

85.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

86.    Without accurate projection data presented in the 14D-9, Plaintiff and other stockholders of Cascadian are unable to properly evaluate the Company's true worth, the accuracy of Perella Weinberg's financial analyses, or make an informed decision whether to tender their Company stock in the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Perella Weinberg*

87.    In the 14D-9, Perella Weinberg describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1 include necessary underlying data, support for conclusions, or the existence of, or basis for,

2 underlying assumptions.  Without this information, one cannot replicate the analyses, confirm

3 the valuations or evaluate the fairness opinions.

4      88.    With respect to the *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose

5 the following:

6      a.  How any net operating losses and other tax shield benefits that Cascadian's

7      management projected would accrue and/or be utilized for the calendar years

8      2018 through 2034 were utilized in this analysis; and

9      b.  the specific inputs and assumptions used to calculate the discount rate range of

10      11.0% to 13.0%.

11      89.    With respect to the *Premiums Paid Analysis*, the 14D-9 fails to disclose the

12 following:

13      a.  the actual transactions and the number of transactions analyzed; and

14      b.  the transaction price for each of the transactions analyzed; and

15      90.    With respect to the *Selected Transactions Analysis*, the 14D-9 fails to disclose the

16 following:

17      a.  The date on which each selected transaction closed; and

18      b.  Whether Perella Weinberg conducted any benchmarking analysis with respect

19      to the selected transactions and the results thereof.

20      91.    These disclosures are critical for stockholders to be able to make an informed

21 decision on whether to tender their shares in favor of the Proposed Transaction.

22      92.    Without the omitted information identified above, Cascadian's public

23 stockholders are missing critical information necessary to evaluate whether the proposed

24 consideration truly maximizes stockholder value and serves their interests.  Moreover, without

25 the key financial information and related disclosures, Cascadian's public stockholders cannot

26 gauge the reliability of the fairness opinion and the Board's determination that the Proposed

27 Transaction is in their best interests.

28 CLASS ACTION COMPLAINT - 23

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

93.    Plaintiff repeats all previous allegations as if set forth in full herein.

94.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

95.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Cascadian.

96.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Cascadian by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Cascadian to its public stockholders.

97.    Indeed, Defendants have accepted an offer to sell Cascadian at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

98.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

99.    The Individual Defendants dominate and control the business and corporate affairs of Cascadian, and are in possession of private corporate information concerning Cascadian's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Cascadian which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

CLASS ACTION COMPLAINT - 24

100.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

101.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Cascadian's assets and have been and will be prevented from obtaining a fair price for their common stock.

102.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

103.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

104.    Plaintiff repeats all previous allegations as if set forth in full herein.

105.    Defendants have disseminated the 14D-9 with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

106.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

107.    The 14D-9 was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the

CLASS ACTION COMPLAINT - 25

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

14D-9 is materially misleading and omits material facts that are necessary to render them non-misleading.

108.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

109.    The Individual Defendants were at least negligent in filing a 14D-9 that was materially misleading and/or omitted material facts necessary to make the 14D-9 not misleading.

110.    The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

111.    Plaintiff repeats all previous allegations as if set forth in full herein.

112.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the 14D-9 was materially misleading to Company stockholders.

113.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the 14D-9 and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.

CLASS ACTION COMPLAINT - 26

1    The Individual Defendants were able to, and did, control the contents of the 14D-9.   The

2    Individual Defendants were provided with copies of, reviewed and approved, and/or signed the

3    14D-9 before its issuance and had the ability or opportunity to prevent its issuance or to cause it

4    to be corrected.

5         114.    The Individual Defendants also were able to, and did, directly or indirectly,

6    control the conduct of Cascadian's business, the information contained in its filings with the

7    SEC, and its public statements.   Because of their positions and access to material non-public

8    information available to them but not the public, the Individual Defendants knew or should have

9    known that the misrepresentations specified herein had not been properly disclosed to and were

10   being concealed from the Company's stockholders and that the 14D-9 was misleading.   As a

11   result, the Individual Defendants are responsible for the accuracy of the 14D-9 and are therefore

12   responsible and liable for the misrepresentations contained herein.

13        115.    The Individual Defendants acted as controlling persons of Cascadian within the

14   meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company,

15   the Individual Defendants had the power and authority to cause Cascadian to engage in the

16   wrongful conduct complained of herein.   The Individual Defendants controlled Cascadian and all

17   of its employees.   As alleged above, Cascadian is a primary violator of Section 14 of the

18   Exchange Act and SEC Rule 14d-9.   By reason of their conduct, the Individual Defendants are

19   liable pursuant to section 20(a) of the Exchange Act.

20        WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class,

21   and against the Defendants, as follows:

22        A.    Ordering that this action may be maintained as a class action and certifying

23        Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

24        B.    Enjoining the Proposed Transaction;

25        C.    In the event Defendants consummate the Proposed Transaction, rescinding it and

26        setting it aside or awarding rescissory damages to Plaintiff and the Class;

27        D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of

28

CLASS ACTION COMPLAINT - 27

the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Cascadian and obtain a transaction which is in the best interests of Cascadian and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 16, 2018            **BRESKIN JOHNSON & TOWNSEND PLLC**

                                    By:   s/ Roger Townsend
                                          Roger Townsend, WSBA # 25525
                                          1000 Second Avenue, Suite 3670
                                          Seattle, Washington 98104
                                          206-652-8660 Phone
                                          206-652-8290 Fax
                                          rtownsend@bjtlegal.com

**OF COUNSEL**

Marc L. Ackerman, Esquire
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Phone: (610) 667-6200
Facsimile: (610) 667-9029
esmith@brodskysmith.com
mackerman@brodskysmith.com
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 28